and we have agreed that Mr. Purser can proceed first since we're splitting our time today. Okay, Mr. Purser, do you want to go forward then? Your Honor, I will. Thank you. If I could have, let me know at five minutes so Ms. Elliott can go ahead and argue and if I can save a minute or so for rebuttal. Okay. Your Honor, thank you. And may it please the Court, Purser, on behalf of Mr. Smith,  that was made by Mr. Purser on behalf of Mr. Smith. In Judge Layton's decision imposing an exceptional sentence to Mr. Smith of 120 months, the facts are basically straightforward and set forth in both briefs. Mr. Smith pled guilty to one count of mail fraud. In addition, he had a guideline range of 70 to 97 months. At the time of sentencing, the Court indicated that he was considering either a variance or departure. I asked if I wanted more time. After explaining or asking the Court what was going to happen with the remaining defendants to be sentenced, the Court indicated that they would be likely within the guideline range if we proceeded. Likely within the guideline range as to the remaining defendants but not as to your client. Well, that's what he was intimating. That's for sure as we got along and that's what I think the issue,  Now, let me make sure I understand. Are you saying you misunderstood the judge and you thought that your client was going to get within the guideline range? Well, I did not think I necessarily misunderstood the judge. What I understood the judge to say is that the other individuals were likely going to be sentenced within the range. He was considering a variance with respect to Mr. Smith's departure. I think he said more than considering. I think he said it was highly likely. Well, and then that's why I asked him what he was likely to do with respect to the other defendants. Right, and then he said those are going to be within the ballpark. That's correct. Yeah. That's correct and the issue then is that we've got, there's 20, I think there's 27, 26 or 27 defendants including Mr. Smith, both Smiths. Right. I knew that Brian Smith had been sentenced to a bit of an exceptional sentence. I think it was eight months beyond the range. Right. And so that's what, you know, and my understanding and knowing what the circumstances were, was that Brian Smith with a more extensive criminal history and also there were some issues and threats to witnesses when he made during the jail. Right. And I expected that we'd be talking within the rank even though the court was considering a variance. Right. And so as we got along and during the discussion it became crystal clear that the court was not just considering a variance, that there was going to be a variance imposed. And that's why I asked for the continuity at that point in time. The judge said that there was not going to be any basis to do so. And respectfully would urge that given the circumstances that the court heard by not granting the request of continuance. And that's what the first basis of this is for. Because I believe that, you know, given the opportunity, I would have been able to distinguish this. Now the government's position is that, well, I should have been aware that this is a possibility. It's always a possibility, but when the government is recommending a sentence within the range, the probation department is recommending a sentence within the range, there's no basis for departure. I know that the, you know, except for Brian Smith who had a different set of circumstances and Brett Smith and the other 25 defendants have been sentenced. But not only within the range or below the range, that it was, you know, that there was not a need necessarily to expect that there be something different. Counsel? Yes. This is Judge Rawlinson. Yes, Your Honor. What considerations could you have brought forward that you didn't already have available? Well, Judge, and this goes to the, I think both the, not just the precedents but the substitutes, that one of the issues is that the judge focused on is that Mr. Smith, you know, basically referenced him as a pied piper of bringing these other folks along. And quite honestly, you know, that, and respectfully to Judge Layton, I mean, these are all adults that were involved in this thing. But, Counsel, what do you do with United States v. Cruz Perez, where we held that those types of considerations should not generally come as a surprise and you should have been prepared for that at the time of sentencing initially? What do you do with that case? Well, I think what the, you're always prepared for those. But, you know, when you take into consideration the guidelines, a couple of factors. One is that the guidelines contemplate that based upon, you know, the leadership perspective. We've got four points for that. The other point is that we're, you know, it's all going along the lines of deterrence. In our 18 U.S.A. 3553, it's supposed to be adequate deterrence, not extraordinary deterrence on this thing. And under those circumstances, respectfully we've urged that although being ready for it, the basis for the variance was erroneous. Considering the totality of the circumstances, there was nothing, I mean, this was a fraud case, but it was a, you know, I don't know if you can say it's a garden variety fraud, but it was a fraud. I mean, that's what it was. There was nothing truly extraordinary about this. There's always a point person when you have more than one individual that's involved in a multi-defendant fraud case. And so there was nothing separating Mr. Smith from anybody else. The other part is that given the circumstances of the case, you know, the guideline or the loss amount was just right at the $2.5 million range, which is the low end of that 18-level adjustment. And so that is all adequately considered within the range. Now, I understand their advisory, but, you know, there needs to be something extraordinary to go beyond that. And there frankly wasn't anything extraordinary. Counsel, you're at four minutes and 52 seconds. Your Honor, I'm going to defer to Ms. Elliott, and then I'll wait for rebuttal. Judge Alicante, do you have a question? I'll take your rebuttal. Okay. Thank you, Your Honor. I'm Suzanne Elliott on behalf of Brian Smith. I think Mr. Pertzer has covered the basic issues in this case. I would like to spend a moment talking about where I believe the district court judge failed to keep in mind the guidelines and in failing to do so imposed an unreasonable sentence. It's clear, obviously, that Judge Layton understands the 3553 factors, but in this case Mr. Brian Smith had received an enhancement for leadership. Nonetheless, ten times in the transcript, Judge Layton refers to the leadership issue as being one that would justify a sentence outside the guidelines. But not just the leadership. I mean, he referred to that, but he also talked about your client's persistence in terms of his criminal conduct, the comparative sentences of other participants, his extraordinary and callous role, the conduct reflected by the tape phone conversation, the lives that he ruined, and the need for deterrence. So he didn't focus solely on the leadership. He did not focus solely, and he did reference the guidelines. I won't disagree with the court on that basis. But beginning on page five, he says, I consider your client to be the leader. On page eight, he said he controlled the Ogburns of the world. He's not a follower. He's not a person who's taking orders from someone else. Then again on page 12, he says your client's the alpha male. Then on 13, he says he's a planner. I'm giving the leaders more time. On page 14, he said the leaders are getting jail time. He references on page 15. But even taking your argument, I'm not sure that he is forbidden from going above the guideline range based upon a factor that's already been considered by the guidelines. I mean, in the old days, maybe. But I think now, if he thinks that the nature of the leadership role is such that is what was going outside the guidelines, I think that is a legitimate consideration. I believe it is a legitimate consideration, Your Honor. But I still believe that under the facts here and the reasonableness test that we now have and the manner in which he is. Well, I'm speaking only for myself. If the only thing on the table were the leadership, the judge sure didn't like those phone calls from jail. Those were threatening, nasty phone calls. They were, Your Honor. And they involved coarse language. Well, they involved threats of violence. That is correct. But I think Judge Layton, you know, that was not as clear from the transcript. That was a secondary consideration. It was the leadership that really drove this here. And, you know, when you look at the reasonableness, sort of the cone in which the district court judge has to sentence, you have to start with the, not a presumption, but the notion that somehow the guidelines have already set a sentence that's appropriate, not too much, not too little. And when you have the enhancement already calculated in, it seems to me that kind of focus on one particular factor that's already been accounted for in the manner in which the plea was negotiated in this case, there's an argument there that the judge's consideration of that is unreasonable. Counsel, what do you do with our case, United States v. Orlando, which rejected a similar argument in terms of criminal history? Well, I think in each case, the reasonableness determination is one where you have to look at precisely the facts of the case and what the judge said. And I think the problem here is the laser-like focus that the judge had here on the leadership role. It became kind of all-consuming in terms of the sentencing here. And as I say, it was already accounted for. Mr. Smith had received a three-point enhancement. So I don't think you can set kind of under the reasonableness umbrella. You can't. Cases have to be distinguished basically on the facts and on the very specific facts of what the judge says in the sentencing transcript. And here, the sentencing transcript, it was clear Judge Layton, who was particularly upset with Mr. Smith and Mr. Smith, and he had a significant lecture for my client, and he seemed to be impressed by the callousness. I've got to say, you know, maybe I've been calloused after 25 years of doing this, but it seemed to be a pretty run-of-the-mill kind of fraud case. And it was that kind of case that should be sentenced within the guidelines. Okay. You've fully used up the time. We'll hear from the government, but you and Mr. Pritzker will have a chance for a rebuttal. Thank you. I'll give all of my rebuttal time to Mr. Pritzker. Mr. Pritzker, okay. Thank you. May it please the Court, my name is Arlen Storm. I'm from the Western District of Washington. I represent the government in this case, the appellee. And I'd like to start with the issue that Mr. Pritzker addressed, and that is whether the district court abuses discretion by not continuing the sentencing hearing for Mr. Smith. In U.S. v. Booker, the Supreme Court put all counsel on notice of two things. One is that in sentencing, district courts will consider 3553A factors, which include, among other things, the nature and circumstances of the offense and deterrence. The second thing that the Supreme Court put all counsel on notice of was that defendants no longer have an expectation of a guideline-range sentence when they come into the courtroom. That's not quite right. They may have an expectation, but it's not protected in the same way it used to be. Thank you. That's right. And based on that lack of protection in the same way that it was six or seven years ago, the Supreme Court then came out with the case of Azari. And in Azari, they held that no further notice beyond what the Supreme Court gave in Booker is required. And so they said Rule 36A no longer requires the court to give a defendant, before the sentencing hearing, notice that it's considering varying upward. With that background, this court decided the Orlando case. And in Orlando, the court said there are a couple considerations that we'll look at in deciding whether or not a district court must consider a continuance when it varies during the sentencing hearing, which is exactly where we're at in this case. And what this court said was we're going to look at the fact of whether there's surprised prejudice, and not surprised prejudice to the defendant based on what happens, his expectation of getting a guideline range sentence, because we know that he doesn't have that expectation after Booker. That's what Mr. Purcher is arguing today. The surprised prejudice has to come for the factual basis, not the fact of the departure of the variance, but the factual basis for the variance. And then the second thing that the defendant now has an obligation to do is show, as Judge Rawlinson said earlier, show that somehow he would have presented his case differently if the surprised prejudice hadn't existed. And so the question that comes before this court is, was there a surprised prejudice when Judge Layton was sentencing Brett Smith? And there certainly was not, for a couple of reasons. One is, if you look at page 15 of Brett Smith's excerpt of record, the judge says he starts out and he's talking to Mr. Purcher and he says very clearly, counsel, I think there are two things here that I want you to know, so you don't have a moving target, that I'm considering in varying upwards. First, there's a lot of people involved in this case. There's 27 people. That's a lot, and I think that's extraordinary. And then he said, and given that there's 27 people involved, we clearly need deterrence in this case and in our community. Mr. Purcher then went forward and argued loss, as he did today. He said, look, the loss amount is at the lower end of 18 enhancement. You don't get to 20 enhancement until you reach $7 million. This is only $2.5 million. It's a lot of money, but it's not there. And the court comes back and says, well, I agree with you. This is a lot of money, but that's not what I'm saying here. I'm saying 27 people, and the court says this, 27 people stealing $2.5 million is a lot more serious than one person stealing $2.5 million. And 27 people in our community who would so willingly do this clearly tells us that we need deterrence in sentencing. And based on that, the court then went forward and varied upward. The defendant was able to offer no clear explanation. He offered an explanation, but no clear explanation of how it would have benefited him whatsoever to get this sentencing hearing continued. Well, when he asked for continuance and the judge then said no, there's a fairly short paragraph in which he starts talking about drug sentences and cocaine and so on. So we get a hint as to where he's going to go. There's that, and I don't understand where that was going, but it wasn't a clear explanation of how it would benefit him to get this. Well, maybe if he had been given a week, he could have thought of it in a good way. But going back to whether or not there was any prejudicial surprise here, there clearly was not, and I say that for two reasons. One is 3553A says, counsel, when you come in there, you better be prepared to talk about the nature and circumstances of the offense. And clearly there's no more clear substance to this offense as far as nature and circumstances go than the fact that 27 people committed it. That's a big embezzlement case. But the other reason that counsel clearly was not surprised about the fact that scope would be an issue in this case is because in the government sentencing memo at Excerpt of Record 65, the government states in its recommendation as a justification, the government makes its recommendation for a substantial term of incarceration given the extensive scope and duration of the offense as well as Brett Smith's violation of Manky Lumber's trust in him. Brett Smith and several under him seduced 25 others into lives now marred with criminal records with the lure of easy cash. Over the course of 18 months, Manky Lumber mailed these individuals 501 checks. I have a question that's in a sense unrelated to the sentencing. Maybe it is. It's extraordinary to me that Manky Lumber could have sent out checks for $2.5 million over the course of 18 months. The crime is not discovered by them. It's the bank. What's going on at Manky Lumber? I mean, they must have an awful lot of spare cash lying around to not notice that $2.5 million goes out the door. I think Judge Layton accurately described Manky Lumber as family business, handshake, trust in the industry, and so on. I read that. And I think that's a very accurate description. Having visited Manky Lumber, talked with the Mankys, I think he hit the nail on the head with that description. Okay. So counsel clearly was aware that the scope and specifically the number of people, 27 people, committed this offense was going to be a big issue at sentencing. And what the Supreme Court has said in Booker and Azari and this court has said in Orlando and Cruz-Perez is you've got to be ready to come in and talk about the 3553A factors, period. And that's the law. Based on that, the court did not abuse its discretion in this case. Counsel has also indicated that deterrence, the court did not individually sentence Brutsmith in this case. It relied only on deterrence. And counsel cites United States v. Barker in support of that in the 1985 case. Looking at the facts of Barker, however, you can see that it's just the opposite of what we have in this case. In Barker, the district court sentenced some very low participants in a marijuana smuggling case to the statutory max. It also sentenced some very high people in the case to the statutory max. And the only reason it gave for sentencing the low and the high numbers of the conspiracy to the statutory max was the need for deterrence. It clearly did not look at the individual factors of culpability for those individuals. Looking here, by the time the court sentenced Brutsmith, it had sentenced 20 other defendants in this case. And it sentenced those individuals, as it explained to counsel, based on their culpability. Many got probation. Some, like Jeff Ogburn, got 37 months. Brian Smith got 54 months. Everybody was sentenced based on their own level of culpability. Clearly, the court did individualize the sentences in this case and did not inappropriately rely on deterrence. This court has repeatedly held, however, in cases such as Wixt, Orlando, and Tankersley, that deterrence can play a very important part in sentencing. And, in fact, 3558 demands that the court consider deterrence. Finally, with respect to leadership, I think the one point that has been overlooked is what the court was saying in this case is not just the fact that you're a leader is extraordinary. The fact that you led a 27-defendant fraud embezzlement conspiracy that went on for 18 months is extraordinary. It's the number of people that the court kept going back to. The leadership enhancement says you get the enhancement for five or more participants, and that's what the guidelines provide. So this case, even under the guidelines, is, in fact, extraordinary. And I think, based on that fact, the court doesn't have to get to the issue of whether or not after the Booker opinion you can enhance twice for the same thing, although I think this court has previously in Tankersley held that. And I think, in fact, the Williams court that Your Honor cited in Rouson's case did hold that specifically. But, again, the number of people in this case is extraordinary. Unless the court has questions, I have nothing further to say. Okay. I think not. Mr. Pritzker, would you like a minute or two for rebuttal? Yes, thank you, Your Honor. And I think Judge Alarcon may have a question for you. Yes. Yeah, Mr. Pritzker, the district court told you at the beginning of the sentencing proceedings that it was going to consider a variance. Correct. And asked you if you wanted a continuance in order to prepare yourself for that, and you said no. Correct. What I'm baffled about in terms of your argument is what is it that the court said that surprised you, and what is it you said to the court that you needed to do in order to counter what the court was saying? Did you tell the court you needed additional legal research? Did you tell the court that there were witnesses that you would have called if given an opportunity to have a continuance? Let me answer both questions. The first part is what was it that the court said to me was that he was considering sentencing the other individuals, aside from Brian Smith, who had already been sentenced, to guideline-range sentences. I knew what the basis was with respect to Brian Smith. One was the threat, which was made from threats to kill from the jail. That was one issue. The other is that he had an extensive criminal history. Brett Smith didn't have either of those particular factors. When the court said that he was going to sentence the other folks within the range, then I believed that it was appropriate for me to go ahead and go forward. When the court started to say that there was the issue with respect to the multiple people that he asserted that were being led blindly by Mr. Smith, and also that it was just the gross nature of the fraud, I started talking about the crack cocaine drug type cases where you've got these kids that are mules for these individuals. That was the additional legal research that I would have presented to the court. The court, though, cut me off. They said, I'm not going to show him anything. There was no book of theology or philosophy that I was going to show that was going to change his mind. That was the basis for the request for the additional time. The problem that I see, and it's noted in Tankersley in Orlando, is that there's this idea of proportionality. In Tankersley, the argument was that it was a terrorism case, but it differentiated between private and public targets. The court rightfully said that we need to be proportional in the way that we treat individuals, irrespective of if it's a private or a public target. And so that was an appropriate use of a proportional sentence. In Orlando, the factual basis, as Ms. Elliott said, these cases oftentimes turn on the factual specificity. Orlando, it was a guy that had been involved with multiple crimes. Mr. Pritchard, I think we're aware of what the case holds and its facts. You're over time in the rebuttal, but if you'd like to sum up. Respectfully, when this court takes a look at the 3553 factors, there needs to be adequate deterrence, but there also needs to be proportionality. Respectfully, based on the sentence that was issued by Judge Layton, I respect tremendously that this was not a proportionate sentence, given the nature of the sentence provided to the other defendants. Okay. Thank you very much. Thank both sides for good arguments. Thank you, Your Honor. United States v. Smith and United States v. Smith, both submitted for decision. Thank you. Thank you, Your Honor. The next case on the argument count, United States v. Kaplan, or maybe Kaplan, I'm not sure.
judges: Alarcon, Fletcher W. , Rawlinson